### Myers *vs.* Brownell.

On the 3d of March, 1817. A executed a mortgage of his farm to B. to secure the payment of a debt due from A. to B. On the 15th of November, 1820, C. a creditor of A. commenced an action against A. and attached the same farm. On the 3d of February, 1821, the debt due from A. to B. secured by said mortgage remaining unpaid, A. executed a warranty deed to B. of the same farm, in full satisfaction of said debt. In June, 1821, C. recovered judgment in his suit against A. prayed out execution, and extended the same on a part of the same farm.—Held that the execution of the warranty deed by A. to B. was not a performance of the condition of the mortgage, but operated as a release of the equity of redemption, and that the title of B. under the mortgage was not merged in his title under the warranty deed, but that B is to be considered as a prior, and C. as a subsequent mortgagee.

A person in the chain of title is a competent witness, if it appear that he has no interest in the event of the suit.

*Bennington*
*February,*
*1824.*

THIS was an action of ejectment for eleven acres of land in Pownall, part of a farm of one hundred and sixty acres formerly owned by Samuel Cord. On trial upon the general issue at the last term, the plaintiff to maintain the issue on his part, gave in evidence a copy of a record of the County Court by which it appeared that on the 15th of November, 1820, said farm was attached at the suit of the plaintiff, Myers, against Cord.—That judgment was

rendered in favour of Myers against Card in that suit at June term, 1821.—That Myers prayed out execution on the judgment, and on the 3d of August, 1821, extended the same on the lands in question. The defendant, Brownell, then gave in evidence a mortgage deed of the whole farm, executed by Card to him on the 3d of March, 1817, conditioned that Card should pay three several notes of hand, executed by him and Brownell to other persons, for the security of debts due from said Card, amounting in the whole to $4350. The whole of the notes fell due within one year thereafter. And it appeared that Brownell had paid some part of the sum due on said notes; and he gave in evidence a record of the Court of Chancery, by which it appeared that at August term, 1821, Brownell obtained a decree of foreclosure by which Card was decreed to pay Brownell the sum of $4530 49, and the interest thereon, by the first day of August 1822, or be foreclosed.

The plaintiff then offered in evidence a copy of a deed of warranty from Card to Brownell of the whole farm, dated 3d of February, 1821, together with evidence tending to show that at the same time, Brownell having paid no part of said notes, it was agreed between Brownell and Card, in consideration of said conveyance, that Brownell should pay the amount of said notes; and that Card then agreed to indemnify Brownell against the encumbrance of the plaintiff's attachment, and that Brownell has since received of Card some portion of the amount of the plaintiff's demand in his suit against Card. All which evidence thus offered by the plaintiff was excluded.

The defendant then offered Card as a witness, his interest having been discharged. The plaintiff objected to the admission of Card as a witness, on the ground that he was in the chain of title, which objection was overruled by the Court, and he was admitted as a witness. The Jury returned a verdict for the defendant. The plaintiff filed exceptions to the opinion of the Court in excluding the evidence by him offered, and admitting Card as a witness on the part of the defendant, and filed a motion for a new trial, on which the cause came on to be heard at the present term.

*Bennet* for the plaintiff. We shall insist that a new trial ought to be granted on account of the rejection of the evidence on the part of the plaintiff, on the following grounds:

Myers
vs.
Brownell.

1. The mortgage deed executed by Card to Brownell on the 3d of March, 1817, was given to indemnify Brownell from loss in consequence of his having become surety for Brownell to a large amount.

It is well settled law, that the person to be indemnified, to entitle him to maintain an action, must shew that he has sustained damage, in the payment of money, or in some thing to which the condition of indemnity extends. A bare liability to be damnified is not enough. Hence, until there was an actual damnification, there could be no breach of the condition of the mortgage. And, by the statute law of this State, a mortgagor has against the mortgagee the right of possession until there be a breach of the condition. The facts offered to be proved on the part of the plaintiff, showed that on the 3d day of February, 1821, (the date of the warranty deed) Brownell had not been damnified; and that at that time, as a consideration for that conveyance, he undertook to pay on his own account all the debts contained in the condition of the mortgage, and for which he was originally but a surety; and also indemnified himself by bond against Myers' attachment. From these facts it is clear that Brownell had at no time been damnified—could at no time maintain a personal action against Card, and hence, under the statute of this State, could not maintain an action of ejectment to recover possession of the mortgaged premises.

2. At law, as well as in Chancery, a mortgage is regarded as a mere accident to the debt, its principal. By assigning the debt the mortgage passes; by paying it the mortgage is satisfied. 2 Bur. 978. 7 John. 278. 11 John. 538. 1 John. 580.

In the present case, the implied undertaking on the part of Card to indemnify Brownell for becoming his surety was the principal to which the mortgage as an accident was attached. The evidence offered and rejected by the Court, entirely swept away this implied undertaking; so much so, that if Card had been afterwards compelled to pay the notes, he might well have sued Brownell for monies paid for his use.

The execution of the second deed was by the express contract of the parties, (without resorting to the principle of merger, founded upon a legal inference) a satisfaction of the mortgage. The original relation between Card and Brownell was changed. Card in

993333999393999333333333333

3

OF THE STATE OF VERMONT. 451

fact, as between them, after the second deed, stood as security for Brownell on the notes. How then can the mortgage be regarded as a subsisting title?—it must fall with that to which it was attached. "A weak foundation destroys the superstructure." This argument goes upon the ground that there had been a breach of the condition.

3. It is contended that the title of the mortgage was merged by the legal operation of the second deed.

As a general rule, where the legal and equitable titles are united, the equitable title no longer exists; it is merged in the legal title, and extinguished by the unity of seisin. 2 Bl. Com. 177. Coke Lit. 384.

Chancellor Kent, in the case James v. Morey, 7 John. R. 278 says, "The merger is only prevented in Chancery in special cases, where it was the evident intention of the parties, and where justice requires the encumbrance to be kept up." But why keep up the encumbrance in this case? Does justice require it? Did not Brownell himself treat the mortgage as extinguished? Did he not provide for the Myers claim? Does he not now hold in his hands nearly the whole amount of that debt?

The case of Goodlittle v. Pope, 7 T. R. 185, is conclusive on this point; for how could posterior equitable rights be let in to the prejudice of the mortgage, unless his mortgage was merged in the absolute conveyance, which Chancery might decree in pursuance of the agreement of 1792?

*D. Robinson* and *Sheldon* for the defendant. The plaintiff has taken two exceptions to the opinion of the Court, first that the evidence offered by the plaintiff was improperly excluded, and secondly that Card was improperly admitted on the part of the defendant.

In support of the first exception the counsel for the plaintiff contends that the defendant's title under the mortgage was merged in his title under the subsequent deed of warranty; but he has himself shown that the defendant's title under the warranty deed is merged in his title under the mortgage. He says that it is a general rule, that where the legal and equitable titles are united, the equitable title no longer exists; that it is merged in the legal title, and extinguished by the unity of seisin. Now apply this principle to the

*Bennington*
*February,*
*1824*

*Myers*
*vs.*
*Brownell.*

present case. The defendant had the legal title under the mortgage, and which had become absolute at law, as there had been a breach of the condition. Card had a mere equitable title only—a right in equity to redeem. 6 Mass. 52. 4 John. 221. This equitable title Card conveyed to the defendant, and being united with the defendant's prior legal title under the mortgage, was merged in it ; and the defendant then had under the mortgage an absolute indefeasible title, which was before defeasible, subject to be defeated by a redemption. As Card had only this equitable title, an equity of redemption in the mortgaged premises, he could convey nothing more by any form of conveyance. And it is perfectly indifferent in what form he conveyed his title to the defendant, whether by a release of his equity of redemption in form, by a deed of warranty, quit-claim deed or other conveyance—the only legal effect is the same, to render the title of the defendant absolute and indefeasible, which was before defeasible, subject to be defeated in equity by a redemption of the mortgage, 2 Con. Rep. 161, Baldwin *v.* Norton. 8 John. 29. It follows that the evidence offered on the part of the plaintiff, and rejected by the Court, was perfectly irrelevant and properly excluded.

The counsel for the plaintiff, it seems, does not rely on his second exception—the admission of Card as a witness. That a grantor in a deed, when discharged from all liability arising from his deed, is a competent witness in support of the title derived from the deed has been often decided. Swift. Dig. 748. 5 Day, Clarke *v.* Johnson. Cro. Char. 102. 18 John. 60. 6 John. 135, Mapes *v.* Frost et al. 2 John. 394.

Skinner, Ch J. delivered the opinion of the Court. The plaintiff, Myers, claims in his declaration eleven acres and forty-three rods of land in Pownall, being part of a farm of one hundred and sixty acres, formerly owned by Samuel Card. The action was tried at the last term under the general issue. The plaintiff to maintain the issue on his part, showed in evidence copies of the record of the County Court, from which it appeared that on the 15th of November, 1820, the farm was attached at the suit of Myers against Card; judgment in that suit was rendered June term, 1821; and the lands in question appraised, and taken upon the execution, in satisfaction thereof, on the 3d of August, 1821. The defendant,

Brownell, then showed in evidence a deed of the whole farm execu- *Bennington* ted by Card to him on the 3d of March, 1817, conditioned, that if $\begin{smallmatrix}February,\\1824.\end{smallmatrix}$ Card should pay three several notes of hand, executed by him and Brownell to other persons, amounting in the whole to \$4350, ac- Myers cording to the tenor of said notes, then the deed to be void. The *vs.* Brownell. notes all became due within one year. He further showed in evidence, that he had paid some part of the sums due on the notes; also the record of the Court of Chancery, August term, 1821, by which Card was decreed to pay Brownell the sum of \$4530 49, and the interest thereon, by the 1st of August, 1822, or be foreclosed. The plaintiff then offered in evidence the copy of a deed of warranty, from Card to Brownell, dated the 3d of February, A. D. 1821, of the whole farm; together with evidence tending to show, that at that time, Brownell having paid no part of the notes, it was agreed between Brownell and Card, in consideration of the conveyance, Brownell should pay the amount of the notes; and also, that Card then indemnified Brownell against the encumbrance of the plaintiff's attachment, and that Brownell has since received a large portion of the money; all which evidence was excluded. The defendant offered Samuel Card as a witness—his interest having been discharged. The plaintiff objected to his testifying, and the objection was overruled. Verdict for the defendant. The plaintiff excepts to the opinion of the Court in rejecting the testimony by him offered; and in the admission of Card as a witness.

The defendant having shown a prior encumbrance to that of the plaintiff under the attachment, it becomes necessary for the plaintiff to show this right of the defendant extinguished or removed. The ground taken by the plaintiff's counsel, if rightly understood, as to the legal effect arising from the facts offered to be proved, is, that the interest of Brownell, acquired by the deed of 1817, was merged in the interest acquired by the deed of 1821; or that the execution of this deed, and the agreement of Brownell, in consideration thereof, to pay the demands referred to in the condition of the first, was in law a performance or satisfaction of the condition, or, in other words, a payment of the debt, (for the case, on principle, is not distinguishable from one in which the deed of mortgage is executed directly to the creditor). The lien of Myers, the attaching creditor, is to be regarded in the same point of view, as that of a second mortgagee; and in deciding the question, it is proper to consider

*Bennington*
February,
1824.

*Myers*
*vs.*
Brownell.

what his rights were at the time of his making the attachment. If the deed of February 1821 had not been executed, Myers could not have had the benefit of his lien without paying off the incumbrance, and this is all he is now required to do; he cannot therefore in justice say, that he is prejudiced by being postponed. If he has the precedence, it has been cast upon him without any act of his, and without the aid of any of the effects of Card, by which his debt might have been satisfied. If payment by Card in property other than the lands mortgaged, had been made, there can be no doubt Myers would be prejudiced, if the same had not been applied to the incumbrance, and the law would have made the application. If the taking of the deed of February 1821 by Brownell is to have the effect of destroying his rights under the mortgage, he must be injured. The injustice of adopting the principle would be more strikingly exemplified, had the demand of Myers equalled in amount the value of the property; and without some authority to support the doctrine the Court cannot be justified in so deciding. No authority is shown to support the position, that the legal estate of the mortgagee is merged by the purchase of the equity of redemption by him; and no case can be found, in which the law will declare the union of two estates in the same person a merger to his prejudice.

Whether the legal inference from the evidence offered would have been that the condition of the mortgage was performed or satisfied, or the claim of the mortgagee under the deed thereby relinquished, must be decided from the manifest intention of the parties; for the law will raise no contrary presumption. It would seem that there could hardly be a contrariety of opinion as to the intention manifested by the facts offered to be proved, which in substance are these : Card has executed a deed of his farm to Brownell, with a condition of defeasance on the payment of certain notes of hand, executed by himself and Brownell as his surety, according to their tenor. Card fails to perform the condition, and proposes to discharge his rights under the defeasance, in consideration that Brownell relieve him from the payment of the demands.—Brownell complies; and Card discharges his equity of redemption in the most natural and ordinary way, by executing an absolute deed of the premises. In lieu then of performing the condition the pledge is surrendered.—This surely is not a release of the pledge by the person taking it; the condition is not performed, nor the debt paid.—That only is done, which the

parties originally agreed upon, that is, the estate should be absolute in Brownell, if the condition was not performed. The cases cited from Connecticut and Massachusetts support the decision made upon the trial, and we are apprized of no authority, that would justify the granting of a new trial on this ground.

*Bennington February, 1824.*

*Myers vs. Brownell.*

The circumstance of Card's having given security to Brownell[1] against the lien of Myers in no way subjects him to the payment of the debt, nor is it perceived how any inference arises therefrom, that Brownell considered it as interfering with his claim under the deed of February 1817. That he had an interest in having this lien removed, which was prior to his purchasing the equity of redemption, and would take precedence to his rights acquired thereby is apparent.

As to the other point, there is no rule of law that excludes a witness because he is in the chain of title. If he is thereby interested in the event of the suit, he is excluded on the ground of interest. If this interest is removed, he may testify. The case states Card's interest was discharged, but the manner in which it was done, does not appear; the Court, therefore, are obliged to consider it as having been effectually and legally done, if by any possibility the case would admit of such procedure. That the grantee may release the covenants, so as to discharge any right which *he* may have, is clear; and if such release accompanies the deed on record, the Court consider, that if, as is insisted, his assignee, without this, would have a right to pursue the first grantor, this would destroy such right. It is not necessary, therefore, to decide whether Card's interest was equally balanced between the parties.

As no sufficient ground is shown in the opinion of the Court to set aside the verdict, judgment must be rendered thereon.