BURCHARD, WILSON & CO. *v.* TOWN OF FAIR HAVEN; AND MOREAU *v.* SAME.

### *Attachment of Real Estate.*

Plaintiffs' caused W's real estate, of which he had good record title, to be duly attached by leaving copies of the attachments in the town clerk's office, but the town clerk took no custody of said copies, and did not safely keep them, nor make any record of the attachments, and through his fault the copies were soon afterwards lost or taken from the office, and no trace whatever of the attachments was left there.

Afterwards, and before final judgment in said suits, W. incumbered and finally sold and conveyed the premises to persons advancing adequate consideration therefor, and who took their conveyances in good faith, without notice of said attachments, and believing the title to be as shown of record. *Held* that no lien was created by said attachments as against said subsequent purchasers.

CASE for negligence of defendant's town clerk. Plea, the general issue, and trial by the court in both cases, March Term, 1874, WHEELER, J., presiding.

It appeared that Burchard, Wilson & Co. sued out a writ of attachment against one Wood, returnable to the Rutland County Court ; that Wood owned a village lot with a house thereon in which he lived in Fair Haven, worth, above the homestead right and some incumbrances, more than enough to satisfy plaintiffs' demand and costs ; that his title was good, and appeared of record in the land records of the town. Said writ was delivered to a deputy sheriff of the county, to serve, and on the 19th of May, 1871, he served it by lodging a copy of it, with his return properly made and certified to attach said real estate, in defendant's town clerk's office. The town clerk did not take custody of said copy, and keep it safely, nor make any record of the attachment, and through this failure the copy was shortly after lost or taken from his office, and no trace whatever of the attachment was left there. The sheriff properly completed the service and made return of the writ. After this service, and before plaintiffs obtained judgment, Wood further incumbered and finally sold the premises, and conveyed them to persons who advanced adequate consideration and took conveyances in good faith, believing that his title was as the records showed it to be, and caused their conveyances to be recorded. Plaintiffs prosecuted their suit to judgment at the September Term, 1872, and recovered $263.87, damages and costs. The court adjourned at that term on November 22, 1872. On January 22, 1873, plaintiffs caused execution to be taken out on their judgment, and levied on said real estate by lodging a copy properly certified in the town clerk's office. The town records showed title to the premises in the incumbrancers and purchasers who had taken conveyances after the copy of plaintiffs' writ was lodged in the town clerk's office, and the town clerk claimed to

those acting for plaintiffs, that no copy of the plaintiffs' writ was ever lodged there. For these reasons plaintiffs did not have the premises set off on their execution. There was no other property out of which plaintiffs could have satisfied their execution, and has been none since.

The facts in Moreau's case were substantially like those stated, except that he recovered judgment at the March Term, 1873, for $549.37, damages and costs, and did not levy execution upon said land. Upon these facts, the court rendered judgment for the plaintiffs in both cases for the amount of their judgments; to which the defendant excepted.

*J. B. Phelps* and *Joyce & Lawrence*, for defendant.

When the service of that writ was completed as shown, it constituted a valid attachment of the real estate; and the failure of the town clerk to record the attachment, or to preserve the copy of the writ on file, could in no wise affect the right of the creditors under their attachments. *Braley* v. *French*, 28 Vt. 546.

The plaintiffs' rights on the premises being in no way affected by the neglect and default of the town clerk, they can have no cause of action against the town for such neglect. The cases do not find that the plaintiffs' rights were interfered with, or their lien disputed, by any one, save as appeared by the record of said mortgage and deed.

The result is, the plaintiffs have failed to secure their debt by their own fault in not pursuing the estate as required by the statute, and not in consequence of any neglect or default of defendant's town clerk. In no case are the representations and statements of a town clerk to be regarded as official acts for which towns are liable; nor are they regarded as any evidence of what does or does not appear upon the records of the town. *Lyman* v. *Edgerton*, 39 Vt. 305.

*J. C. Baker* and *Dunton & Veazey*, for plaintiffs.

The only ground upon which defendant can stand is, that our attachment lien was perfect without the record of the town clerk, and that if we had had the land set off on execution, we should

42

have held it as against the purchasers. If the assumption be correct in law, that the leaving of the writ at the town clerk's office creates. the attachment, without any record by the clerk, and whatever then becomes of the writ, then our answer is, when we went to the town clerk's office with a view of having the land set off to satisfy our execution, and to see what land was attached, and found no copy of the writ and return, nor any record thereof, and the same town clerk informed us that no copy of the writs was ever lodged there, and we found that in the meantime the property had been sold, and the record title had passed to the purchasers, we were warranted in relying upon the apparent fact that no attachment lien had ever been created. There was no *laches* on our part. The fact that no copy could be found in the office, and no record thereof, and that the land had long been conveyed to others, tended to confirm the statement of the clerk that no copy had been lodged there.

Being induced by the negligence of the town clerk to do that which the law prescribes was his duty, and by his express statements of material facts when he was speaking and acting in an official capacity, to take a different course from that which we otherwise should have taken, and having suffered a loss thereby, the defendant town is liable for that loss. Gen. Sts. p. 109, ss. 30, 32; p. 294, ss. 37, 38. *Lyman* v. *Edgerton*, 29 Vt. This case is widely distinguishable from *Braley* v. *French*, 28 Vt. 546.

We submit that the lodgment of a copy of a writ in the town clerk's office by an attaching officer, will not, the copy having been destroyed and no record made of it, create a lien on the real estate described in the officer's return as against an innocent purchaser without notice. No case has gone so far yet; and such a rule would violate all recognized and established principles pertaining to our registry laws. *Cogwell* v. *Meson*, 9 N. H. 48; Morrison's Dig. 66. Our registry system is designed to make the town clerk's office show the exact state of the title of all the real estate in town, and when people make a search there, they may legally rest upon what is there shown. *Sawyer* v. *Adams*, 8 Vt. 172.

The opinion of the court was delivered by

Ross, J. These cases present substantially the same question, and for that reason are considered together. The plaintiffs in each suit sued out a writ of attachment against one Wood, who owned real estate in the village of Fair Haven of sufficient value above the incumbrances to satisfy the judgments which were afterwards obtained by the plaintiffs in the suits. The writs were served by a deputy sheriff, who lodged for record with the clerk of the town, copies, with his return thereon properly made and attested, to attach Wood's real estate, and who completed their service on Wood. The town clerk did not safely keep the copies, nor make any record of the attachments; and shortly after the copies were lost or taken from the office, and no trace of the attachments left there. Intervening the attachments and the renditions of judgment, Wood sold and conveyed the real estate attached, to *bona-fide* purchasers for value, who had no notice of the attachments, and who caused their conveyances to be duly recorded. The plaintiffs, without having levied upon and set off the real estate attached, in satisfaction of the executions issued on the judgments obtained by them, brought these suits against the town to recover damages claimed to have been sustained by them through the neglect of the town clerk to record the attachments. It is found that Wood had no other property from which the plaintiffs could obtain satisfaction of their judgments. If the attachments, although through the neglect of the town clerk no evidence of them existed in his office, were a subsisting lien on the real estate attached, against the subsequent *bona-fide* purchasers, the plaintiffs should have set off the real estate attached on the executions, and so have obtained satisfaction of their judgments. If the judgments could have been thus satisfied, the plaintiffs have failed to obtain payment through their own neglect to pursue the remedy given by law, and not through the neglect of the town clerk to safely keep and record the copies of the writs of attachment. If, from this neglect of the town-clerk, the subsequent *bona-fide* purchasers will hold the real estate against the attachments, the plaintiffs were excused from levying upon it, as the levies, if made, would have been wholly unavailing to satisfy

the judgments. The law never compels the performance of a need-less and wholly useless act. If, on the facts found to exist in these cases, a levy of the plaintiffs' executions on the real estate attached would have been wholly unavailing, the plaintiffs have suffered damages through the neglect of the town clerk, for which neglect the defendant is liable under the statute. Hence the cases present the question, whether an attachment of real estate, perfected so far as it is in the power of the plaintiff to perfect it, and of which all evidence has ceased to exist in the town clerk's office wholly through the neglect of the town-clerk, prevails over the recorded deed of a *bona-fide* purchaser of such real estate, who made his purchase during the existence of the attachment, and without any notice of it ?

It is well settled, that a purchaser of real estate for value, and without notice of a prior conveyance, and who has his deed duly recorded, will hold the same against a prior grantee who has failed to have his conveyance recorded, whether through his fault or that of the town clerk. This is so held because, by the pro-visions of the statute relating to the conveyance of and title to real estate, the true condition of the title is to be shown by the land-records required by law to be kept for that purpose. Hence, purchasers have the right to rely implicitly upon such records. They are constructive notice to all the world of the condition of the title. Whoever, therefore, takes a conveyance of real estate, and neglects to have the same recorded, assumes the risk of losing all advantage to be derived from the same, if a recorded attach-ment or conveyance intervenes before he causes such conveyance to be recorded. The same public policy which requires that a deed shall be recorded, requires that an attachment of real estate, which may result in a change of its ownership, should also be re-corded. Hence, the statutes requiring both should be given like force, and receive similar construction. Prior to the statute of 1823, an attachment of real estate was effected by the officer's leaving a copy of the writ with his return thereon with the town clerk at his office. All persons were required to take notice of an attachment so made. For greater security to dealers in real estate, the statute of 1823 made it the duty of the officer to cause

the substance of the writ and of his return to be recorded by the town clerk in a book to be kept for that purpose. It was also made the duty of the town clerk to make and safely keep a record of all such attachments. The object and effect of such recorded attachments was early announced by this court. In *Huntington* v. *Cobleigh*, 5 Vt. 49, the court, while considering the neglect of a town clerk to record an attachment under the statute of 1823, say : " It may then be inquired what is to be the effect if the town clerk neglects his duty in this particular. Since the statute of 1823, the records of these attachments are to be made in a book kept for the purpose. To this book persons are to resort who wish to obtain information whether any land has been attached ; and if a creditor or person desirous of purchasing finds no such record on inquiry, he may safely attach or purchase, unless he has other notice that an attachment has been made. Under the former law, he was compelled to take notice of an attachment when a copy was left. But under this statute, he has no constructive notice unless the substance is recorded ; but he may still be affected by actual notice of an attachment." The principles thus announced are the same that have long been applied to the case of an unrecorded deed. No reason has been suggested or occurs, why a purchaser who pays his money for a conveyance of land which fails to be recorded through the neglect or default of the town clerk, should receive less favorable consideration, or be held under more strict rules in regard to securing the record of his deed, than a creditor who attempts to acquire title by the prosecution of legal proceedings. If a purchaser, because his deed is unrecorded through the neglect of the town clerk, must lose the benefit of his purchase against a subsequent *bona-fide* purchaser who has his conveyance recorded, the right acquired by an attachment that for like reason fails to be recorded, should yield to the recorded deed of a *bona-fide* purchaser who purchases unaffected with notice of such attachment. The same cause—the neglect of the town clerk, occasions the loss in both cases. If the former must pursue the town clerk, or the town which is made responsible for his neglects of duty, for compensation for his loss, the latter ought equally to be remitted to that

remedy.    Neither the town clerk nor the town has any right to
complain if the same legal principles and remedies are applied in
both cases.

The defendant relies principally upon some portions of the
opinion in *Braley* v. *French*, 28 Vt. 546.    In that case, the officer
made a legal attachment of the land in controversy, but before
the town clerk had recorded the substance of the copy of the writ
that the officer had left with him, the officer withdrew it from the
office without authority from the plaintiff in the writ.    The subse-
quent purchaser had actual notice of the attachment, and of the
withdrawal of the copy by the officer.    The court properly held
that the officer had no authority by virtue of his office, to vacate
an attachment once made by him, and that, as the subsequent
purchaser had actual notice of his proceedings, the attaching
creditor could hold the land.    Judge Isham, in the opinion of the
court delivered by him, remarks :    " There would be no in-
justice either, if the defendant had received his conveyance
in ignorance of that attachment, or of the plaintiff's lien.    In that
event, the question would simply be, which of these parties should
have their remedy against the town clerk for his neglect to make a
record of that attachment.    As the plaintiff first acquired a lien
upon these premises, and as that lien has ripened into a valid title
to the land, we think it must prevail against the defendant's deeds,
particularly as the conveyance was taken by the defendant with
notice in fact of the right and lien of the plaintiff upon the
premises."    The defendant insists that this language implies that
such an attachment and lien would prevail over the recorded deed
of a subsequent *bona-fide* purchaser without notice.    It is to be
observed that the learned judge did not attempt to decide which
of the parties would be entitled to maintain an action against the
town clerk.    No such question was before the court for decision
in that case.    Pushed to the limit claimed for it by the defendant,
it would destroy all reliance upon the records required by law to
be kept for showing the true condition of the title to real estate.
We do not think that the learned judge held, or intended to be
understood as announcing, any such doctrine.    In *Lyman* v. *Ed-
gerton*, 29 Vt. 306, having under consideration the statutes relat-

ing to such records, he says: "The intention of the Legislature and the policy of the act are obvious. It was their intention to provide a feasible method that should be certain, and as solemn in its character as record evidence, by which all persons who are or may be interested in the title of real estate, may ascertain its true condition, and the incumbrances resting upon it. These records alone, so far as the liability of the town is concerned, are made the organs of information in relation to such titles, and purchasers, as well as those who are making advances upon its security, are bound to consult those records for their information, and not the man who, for the time being, holds the office of town clerk."

All the requirements of the statutes relating to the recording of conveyances and attachments of real estate, look to the furnishing thereby of safe and reliable information of the condition of the title thereto, to all who may have occasion to become purchasers thereof. Such purchasers, relying upon such records, have the right to such title as the records disclose. If the records do not disclose the true state of the title, through the neglect of the town clerk, and a prior purchaser or attaching creditor thereby loses his title or lien upon such real estate, the statute clearly makes the town clerk, and, through him, the town for which he acts, liable for the loss thus sustained.

Judgment affirmed in both cases.